UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARTHA RANGEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| OMNI HOTEL MANAGEMENT | § | SA-09-CV-0811 OG (NN) |
| CORPORATION a/k/a OHMC, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

TO:   Honorable Orlando Garcia
      United States District Judge

This report and recommendation addresses the pending motion for summary judgment.[1] After considering the motion,[2] the response,[3] the reply,[4] the sur-reply,[5] and the documentary evidence,[6] I recommend granting the motion and entering summary judgment in favor of the defendant.

**Nature of the case**.  In this lawsuit, plaintiff Martha Rangel sued her former employer Omni Hotels Management Corporation (Omni) for employment discrimination and retaliation

---

[1]Docket entry # 26.

[2]Docket entry # 26.

[3]Docket entry # 49.

[4]Docket entry # 52.

[5]Docket entry # 60.

[6]Docket entry #s 26 & 52-55.

under Title VII of the Civil Rights Acts of 1964. Rangel worked as the human resources director for the Omni Hotel at the Colonnade in San Antonio. Rangel alleges she was terminated based on gender.[7] She also alleges she was terminated in retaliation for counseling her male supervisor about inappropriate behavior toward a young female employee.[8] Omni moved for summary judgment on both of Rangel's claims.

**Rangel's gender discrimination claim**. Rangel's termination resulted from her involvement in an incident that occurred at the hotel on March 11, 2009. Rangel received a tip from a hotel employee that a hotel steward was selling illegal drugs on hotel premises. Rangel instructed the hotel's loss prevention officer to conduct a baggage check of hotel employees. During the baggage check, the loss prevention officer found cocaine in the steward's bag. The steward provided the names of 10 other hotel employees who used drugs. Rangel gave the ten employees a choice: voluntarily resign or take a drug test. Eight of the ten resigned; two tested positive for illegal drugs. Neither party disputes these facts.

The dispute centers on who made the decision not to call the police after the loss prevention officer found the cocaine in the steward's baggage. According to Rangel, her supervisor—the hotel general manager—instructed her not to call the police, but to use the steward to obtain the names of other employees using drugs. Omni maintains that Rangel made the decision not to call the police, as a deal with the steward to obtain the names of other drug users.

The next day, Rangel reported the incident to Omni's regional human resources director,

---

[7]Docket entry # 14, ¶ 33.

[8]*Id*. at 33 & 37-38.

who in turn reported the matter to the regional vice-president.  After learning about the matter, the regional vice-president investigated what occurred and determined that Rangel was not truthful about who made the decision about calling the police.  The vice-president also learned that the steward was hired despite having a criminal background that included convictions for unlawful carrying of a weapon and possession of marijuana.  The regional vice-president terminated Rangel on March 16, 2009.  Rangel maintains she was terminated based on gender.

**Rangel's prima facie case on her gender-discrimination claim**.  Omni's first argument for summary judgment is that Rangel cannot establish a prima facie case of employment discrimination because no evidence exists that she was replaced by a male or treated less favorably than similarly-situated male employees.[9]  Under the *McDonnell Douglas* burden-shifting framework that applies to employment discrimination cases, a plaintiff must first establish a prima facie case of gender discrimination.[10]  To establish a prima facie case, the plaintiff must show that "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably."[11]  Omni challenges the fourth element.

To show that Rangel cannot establish a prima facie case of gender discrimination, Omni

---

[9] Docket entry # 26, p. 7.

[10] *See Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

[11] *Nasti*, 492 F.3d at 593.  *See also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Davis v. Chevron U.S.A.*, 14 F.3d 1082, 1087 (5th Cir. 1994).

presented a declaration by Michelle Smith, Omni's regional human resources director. Smith attested that Rangel was replaced seven months after the incident by a female human resources director.[12] Smith's affidavit negates the fourth element of Rangel's prima facie case because it shows that Rangel was replaced by someone within her protected class. Making this showing shifted the burden to Rangel to raise a fact question about whether she was replaced by a woman.

Rangel presented no summary-judgment contradicting Smith's affidavit or showing that she was replaced by a man. Rangel, however, can establish the fourth element of a prima facie case by presenting summary-judgment evidence that a similarly-situated male was treated more favorably.[13] To do so, Rangel must show that Omni gave preferential treatment to a male employee under nearly identical circumstances—that is, the misconduct for which Rangel was discharged must be nearly identical to that engaged in by a male employee.[14] Rangel relies on her job relative to the job of hotel general manager to raise a fact question about whether a similarly-situated male was treated differently. Rangel maintains she and the general manager were similarly situated because they were both members of the hotel executive committee. Rangel complains that the general manager was not terminated for his role in the incident, but she was terminated.

Rangel's membership on the executive committee does not make her similarly situated to the general manager; however, her involvement in the incident relative to the general manager's involvement may. The parties do not dispute that two persons had the authority to control the

---

[12]Docket entry # 26, exh. C, ¶ 15.

[13]*See Okoye*, 245 F.3d at 512-13.

[14]*Okoye*, 245 F.3d at 514.

March 11, 2009 incident—Rangel and the hotel general manager.  The summary-judgment evidence shows that Rangel was terminated, but the general manager received a written warning.  Although Omni relies on how Rangel responded during the ensuing investigation—rather than how she handled the incident—as the basis for discharge, the incident and the investigation are intertwined.  The general manager was counseled for a lack of leadership during the drug investigation, making inappropriate comments to Rangel during the investigation, and failing to act on a known violation of Omni's nepotism policy.[15]  Omni purportedly terminated Rangel for being untruthful about the decision not to call the police and for violating company policy by hiring employees with known and relevant criminal backgrounds.  Omni's reasons for counseling the general manager and terminating Rangel are very similar: each was disciplined for conduct during the post-incident investigation and for violating company employment policy.  These reasons indicate that Omni viewed Rangel and the general manager as similarly situated.  Under these facts, the similarity in the disciplined conduct is sufficient to establish the fourth element of Rangel's prima facie case.

**Omni's nondiscriminatory reason for terminating Rangel**.  "If a plaintiff is successful in establishing a prima facie case of discrimination, the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action.[16]  Omni met that burden by offering the following explanation for terminating Rangel: Rangel was not forthcoming during the investigation about calling the police and Rangel was

---

[15]Docket entry # 55, exh. J (written warning by regional vice-president to hotel general manager).

[16]*Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007) (internal citations omitted).

responsible for hiring employees with known and relevant criminal records.[17]  These reasons are legitimate, nondiscriminatory reasons for terminating Rangel.

**Whether Rangel can present evidence of pretext**.  If the employer meets its burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action, the burden "shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination.  If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment."[18]

Rangel attempted to raise a fact question about whether Omni's reasons for terminating her were a pretext for gender discrimination in three ways.  First, Rangel argued that both the male hotel general manager and the male loss prevention manager failed in their respective duties to call the police.[19]  Rangel relies on Smith's deposition testimony that Omni does not have a policy that requires calling the police when an employee is found with drugs.  Rangel also relies on Smith's testimony that the loss prevention manager did not violate company policy when he failed to call the police.  Rangel argued that Smith's testimony constitutes evidence of gender discrimination because although Rangel was terminated for not calling the police, neither male employee—the general manager and the loss prevention officer—were terminated for not calling the police.

---

[17] Docket entry # 26, pp. 6-7.

[18] *Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007) (internal citations omitted).

[19] Docket entry # 49, pp. 15-16.

This evidence does not raise a fact question about whether Omni's reasons for terminating Rangel were a pretext for discrimination because Omni did not state that it terminated Rangel for failing to call the police.  Instead, one of the reasons Omni identified for terminating Rangel was because Rangel was not forthright during the post-incident investigation—specifically, about who decided not to call the police.  The regional vice-president testified that he made the decision to terminate Rangel after determining Rangel lied about who decided not to call the police.[20]  He did not testify that the made the decision to terminate Rangel because she did not call the police.

Rangel also attempted to raise a fact question about pretext by challenging the regional vice-president's belief that Rangel had lied during the post-incident investigation.[21]  Rangel relied on deposition testimony by Smith and the regional vice-president about Rangel's reputation for truthfulness.[22]  Rangel's characterization of the testimony, however, is overstated.  Smith testified that when Rangel complained that the general manager was scrutinizing her work—after Rangel had counseled the general manager about inappropriate comments to a female employees—she knew Rangel to be honest.[23]  That conversation occurred many months before the drug investigation occurred.  The regional vice-president testified that he had never considered Rangel to be a liar, but he also stated that he did not believe Rangel about who

---

[20] Docket entry # 54, exh. E, pp. 17-18 & 40; docket entry # 26, exh. D, pp. 17-19 & 24-25.

[21] Docket entry # 49, pp. 16-17.

[22] Docket entry # 54, exh. D, p. 28; *id*., exh. E, p. 25.

[23] Docket entry # 54, exh. D, pp. 27-28.

decided not to call the police. The regional vice-president testified that he did not believe Rangel because the general manager's story and the loss prevention officer's story matched about who decided not to call the police.[24]

Rangel presented nothing that raises a fact question about whether the regional vice-president belief was reasonable. Rangel simply disputes the vice-president's conclusion. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[25] Even if the vice-president's conclusion was wrong, his incorrect conclusion would not raise a fact question, in the absence of evidence that the regional vice-president did not really believe the general manager or the loss prevention manager. That is, it does not matter whether Rangel made the decision not to call the police; what matters is whether the regional vice-president reasonably believed Rangel lied about who made the decision during the post-incident investigation.[26] If the general manager and the loss prevention officer lied about who made the decision not to call the police, the ultimate falseness of the vice-president's

---

[24]Docket entry # 26, exh. D, pp. 24-25 & 43-44.

[25]*LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

[26]*Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165-66 (5th Cir. 1993) ("[T]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee. The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal. Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."). *See Amezquita v. Beneficial Tex.*, No. 06-41476, 2008 WL 276279, at * 5 (5th Cir. Jan. 8, 2008) (explaining that whether the supervisors were wrong to believe that the plaintiff had lied was irrelevant because "an employer's incorrect belief in the underlying facts—or an improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination").

determination that Rangel lied proves nothing as to Omni; it proves only that the general manager and the loss prevention officer lied.

Lastly, Rangel attempted to raise a fact question by denying that she made the decisions to hire the hotel steward and other employees with significant criminal histories.[27] Rangel maintains her subordinate—the human resources manager—hired the employees. Even if the human resources manager made the actual employment offers, the human resources director would bear ultimate responsibility for the human resources manager's decision. Rangel also complained that Omni did not have a policy against hiring persons with certain criminal histories. Rangel relies on Smith's testimony that Omni hires persons with criminal convictions. That testimony, however, recognizes that criminal history does not necessarily implicate conduct that could subject Omni to civil liability for the actions of its employees. Smith's testimony clearly indicated that it was the particular criminal history that made the steward ineligible for employment. Even if Omni used Rangel as a scapegoat in the aftermath of discovering a drug-selling operation on hotel premises, Title VII does not preclude Omni from doing so. It only precludes Omni from making Rangel a scapegoat on the basis of gender. Rangel's summary-judgment evidence does not raise a fact question about pretext. Consequently, Omni is entitled to summary judgment on Rangel's gender discrimination claim.

**Rangel's retaliation claim**. Rangel alleges she was retaliated against after she reported her male supervisor's inappropriate behavior with a young female employee.[28] As retaliation, she maintains she was blamed for inconsistencies in Omni's chain of command and she was

---

[27]Docket entry # 49, pp. 18-20.

[28]Docket entry # 14, pp. 8-9.

terminated even though she acted at the direction of her male supervisor.  Omni argued that it is entitled to summary judgment on the retaliation claim because Rangel did not engage in protected activity.[29]

"A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[30]  Omni challenges the first element of Rangel's prima facie showing.  Omni maintains Rangel did not engage in protected activity when she reported her male supervisor's inappropriate behavior.  Although such conduct ordinarily constitutes protected activity under Title VII, Omni maintains Rangel's report does not constitute protected activity because Rangel did not step outside her role as human resources director.  Omni relies on the Fifth Circuit's decision in *Hagan v. Echostar Satellite, L.L.C.*[31]

In *Hagan*, the Fifth Circuit considered a field service manager's claim that he was terminated "in violation of the anti-retaliation provisions of the [Fair Labor and Standards Act (FLSA)] for personally objecting to the field technicians' schedule change because of a potential decrease in overtime pay and for passing along his technicians' question regarding the legality of the change to the Human Resources department."[32]  In considering this claim, the Fifth Circuit adopted the following Tenth Circuit rule:

---

[29]Docket entry # 26, pp. 14-15.

[30]*Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[31]529 F.3d 617 (5th Cir. 2008).

[32]*Hagan*, 529 F.3d at 623.

> In order to engage in protected activity under [the FLSA], the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.[33]

The Fifth Circuit characterized the rule as "eminently sensible for management employees . . . because a part of any management position often is acting as an intermediary between the manager's subordinates and the manager's own superiors."[34] The Fifth Circuit reasoned as follows:

> If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity under [the FLSA]. An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees—management employees, human resources employees, and legal employees, to name a few—being difficult to discharge without fear of a lawsuit. For those reasons, we agree that an employee must do something outside of his or her job role in order to signal to the employer that he or she is engaging protected activity under [the FLSA].[35]

The Fifth Circuit has not applied the rule to employment discrimination claims under Title VII. While adopting the reasoning in a Title VII case may benefit employers like Omni, extending the rule would strip Title VII protection from "whole groups of employees— management employees, human resources employees, and legal employees, to name a few"—employees who are in the best positions to advise employers about compliance. Because no authority extends the *Hagan* rule to Title VII, Omni is not entitled to summary judgment on the retaliation claim on the

---

[33]*Hagan*, 529 F.3d at 627 (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir.1996).

[34]*Hagan*, 529 F.3d at 628.

[35]*Hagan*, 529 F.3d at 628.

11

basis of *Hagan*.

Omni also maintains Rangel cannot present evidence supporting the third element of her prima facie case—that a causal link existed between the protected activity and the adverse employment action. Omni argued that no evidence exists establishing a causal connection between Rangel's report about the general manager's conduct and Rangel's discharge eight months later.[36] In response, Rangel relies on testimony by Omni employees establishing that Rangel was terminated based on the general manager's version of the March 11, 2009 incident. Rangel maintains that the evidence strongly suggests the general manger exercised significant influence over the decision to terminate her.[37] Rangel relies on the Fifth Circuit's instruction in *Russell v. McKinney Hospital* that "it is appropriate to tag the employer with an employee's [unlawful] animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker."[38]

In *Russell*, the plaintiff presented evidence at trial about a colleague's age-related remarks and threats to quit if the decisionmaker did not fire the plaintiff. The Fifth Circuit explained that, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker."[39] In *Russell*, the colleague who made the age-related remarks and threatened to quit was the son of the CEO of the parent corporation. The Fifth

---

[36]Docket entry # 26, pp. 16-17.

[37]Docket entry # 60, p. 6.

[38]*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000).

[39]*Russell*, 235 F.3d at 226.

Circuit explained that the jury could have found that the colleague exercised greater influence over the decisionmaker than that of the ordinary worker at his level due to his father's position as CEO of the parent corporation, that the colleague took advantage of that power, and that the decisionmaker faced limited options about whether to fire the plaintiff.[40]

Rangel's reliance on *Russell* fails because no evidence suggests the general manager exercised influence or leverage over the official decisionmaker—the regional vice-president. If the general manager lied about calling the police, he likely lied to protect his own job. The regional vice-president was so concerned about the general manager's role in the March 11, 2009 incident that he formally counseled the general manager for failing to take a more direct leadership role in the initial handling of the incident and the subsequent investigation. In deciding to terminate Rangel, the regional vice-president may have believed a person who lied, but "anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."[41] There is no evidence linking Rangel's termination to her earlier report about the general manager. Thus, no evidence raises a fact question about whether the vice-president made a retaliatory decision. Consequently, Omni is entitled to summary judgment on Rangel's retaliation claim.

**Recommendation**. Rangel insists the summary-judgment evidence raises numerous fact questions precluding summary judgment.[42] To the extent fact questions exist, those questions are immaterial to Rangel's prima facie showings. That the general manager may have lied about

---

[40] *Russell*, 235 F.3d at 228.

[41] *LeMaire*, 480 F.3d at 391.

[42] Docket entry # 49, p. 23.

calling the police does not equate to gender-based discharge or retaliatory discharge. If the ultimate decisionmaker believed the wrong person during the investigation, that fact shows only that the decisionmaker acted on inaccurate information—not that the decisionmaker acted based on gender or retaliation. At most, the summary-judgment evidence shows that Rangel was treated unfairly, but the evidence does not raise a fact question about whether she was subjected to unlawful discrimination. I recommend granting Omni's motion (docket entry # 26) and entering summary judgment in favor of Omni on all claims.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[43] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the

---

[43] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

district court.[44]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[45]

**SIGNED** on October 4, 2010.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[44] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[45] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).